### IN THE

# SUPREME COURT OF TENNESSEE

### FOR THE

### EASTERN DIVISION.

KNOXVILLE, SEPTEMBER TERM, 1916.

MONTLAKE COAL CO. *v.* CHATTANOOGA CO., LIMITED, *et al.*

(*Knoxville.* September Term, 1916.)

**EQUITY. Pleading. Repugnancy of bill.**

Where a coal company, the lessee of coal lands, filed a bill against its lessor company to obtain a rescission of the lease contract for fraud, and thereafter sought to amend its bill so as to seek relief both by way of the remedy of rescission and by way of the remedy of reformation of the lease contract and enforcement of one of its provisions, the bill, as amended, was subject to the charge of repugnancy.

Cases cited and approved: Phillips v. Rooker, 134 Tenn., 457; Daly v. Brennan, 87 Wis., 36; West v. Badger Lumber Co., 56 Kan., 287; Hopper v. Hopper, 11 Paige ch. (N. Y.), 46; Shields v. Barrow, 17 How; 130 Henderson v. Boyd, 85 Tenn., 22; Bynum v. Ewart, 90 Tenn., 655; Dillard & Coffin Co. v. Smith, 105 Tenn., 372.

Cases cited and distinguished: Kinney v. Kiernan, 49 N. Y., 164; Fuller-Warren Co. v. Harter, 110 Wis., 80; Zimmerman v. Robinson & Co., 128 Iowa, 72; Butler v. Hildreth, 5 Metc. (Mass.), 49; Conrow v. Little, 115 N. Y., 387; Wilson v. New United States Cattle Ranch Co., 73 Fed., 997; Neal v. Reynolds, 38 Kas., 432.

440

. FROM HAMILTON.

Appeal from the Chancery Court of Hamilton County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court.— W. B. GARVIN, Chancellor.

SPEARS & SPEARS and WILLIAMS & LANCASTER, for Montlake Coal Co.

THOMAS & THOMAS and SAMUEL B. SMITH, for Chattanooga Co.

LITTLETON, LITTLETON & LITTLETON, for Durham Coal Coal & Iron Co.

MR. JUSTICE WILLIAMS delivered the opinion of the Court.

The bill of complaint as originally filed by the Montlake Coal Company, as lessee under the Chattanooga Company, Limited, was to obtain a rescission of the lease contract which covered a large and valuable boundary of coal lands, near the city of Chattanooga. The defendant interposed a demurrer attacking the complainant's asserted right to the remedy of rescission. Thereupon the lessee company filed an amended and supplemental bill embracing other allegations and a prayer for relief, so as to seek, in the alternative,

a reformation of the contract of lease and to recover damages for a breach of one of its provisions—a covenant for quiet enjoyment of the demised premises.

The gist of the bill as amended is that the lease, which the defendant executed to the complainant under date of August 31, 1903, fails to include a parcel of land of about eighty acres lying between the lower and the upper bluff or precipice of Walden's Ridge within the bounds of what is known as the Waller tract as the same has since been judicially ascertained and located. The bill charges that at the time the lease was made this parcel of land was pointed out to complainant by the defendant company as a part of the leased premises and was intended to be included in the lease, but was omitted therefrom by fraud, accident, or mistake; that recently, in the course of a litigation which the Waller heirs successfully prosecuted against complainant, to recover possession of this eighty acre tract of land, it was discovered and for the first time made to appear not only that said parcel is not covered by the lease, but that the title to it was not in the defendant; and that the representation by defendant that this parcel was included in the lease was, for reasons set forth in the bill, a material consideration inducing complainant to enter into the lease. Because of its omission and the failure of title in defendant, complainant in the amended bill prays: (1) For rescission of the lease and damage for expenditures, etc.; or, in the alternative, (2) for damages in a very large sum for breach of the covenant for quiet enjoyment contained in the

Montlake Coal Co. v. Chattanooga Co.

lease, and, if necessary to this latter relief, (3) for reformation of the lease contract.

The lessor company filed a demurrer to the amended bill in which were repeated all of the grounds of its first demurrer, along with other grounds peculiarly applicable to the reformed bill of complaint.

The chancellor held that no right to rescind the contract existed, but that the bill made a case for reformation of the lease so as to cover the eighty acres as part of the leased premises, and for a recovery of damages for breach of the covenant for quiet enjoyment that appeared in the lease contract.

The lessor or defendant appealed to the court of civil appeals, and assigned errors as to that portion of that decree which was adverse to it; and an appeal was also prayed by the lessee company.

We have granted the writ of *certiorari* in order to a re-examination of the case and determination as to the correctness of the decree of the last-named court.

In our opinion the disposition of the case calls for a discussion of but two of the many grounds of demurrer.

The first of these is to the effect that, when complainant company shows in the amended bill that it had filed its original bill alleging inducing fraud and praying for a rescission of the lease contract a conclusive election of remedies was shown to have been made as between rescission of the contract and any enforcement thereof as a valid one.

This ground of demurrer is insisted upon in the face of the fact that the demurrants contended below to the satisfaction of the chancellor, and have persuaded us upon this appeal that the right to rescind the contract did not exist. The contention therefore must be that, notwithstanding that fact, a conclusive election of rescission as a remedy has been made, precluding complainant from thereafter treating the contract as an enforceable one.

This calls for a consideration of what is meant by an ''election of remedies,'' as relates to such a state of facts. It frequently happens that for redress of a particular wrong the law affords two or more remedies; and, if these remedies are so inconsistent or repugnant that the pursuit of one necessarily involves the negation of the other, the party who invokes one of them is held by some courts to have made his election and cannot thereafter have the benefit of the other. But if under a mistaken belief that he has a particular remedy a complainant attempts to enforce it, the doctrine of election of remedies is generally held not applicable, for the reason that no choice was ever really open to him. Or, as it has been expressed in *Kinney v. Kiernan,* 49 N. Y., 164:

''The institution by a party of a fruitless action, which he has not the right to maintain, will not preclude him from asserting the rights he really possesses.''

The supreme court of Wisconsin has expressed similar views:

"Does that rule apply where a person, supposing he has two causes of action for the satisfaction of his claim, when he in fact has but one, sues upon the supposed cause which has no existence, and is defeated on that ground? Is he under such circumstances precluded from suing upon the only cause of action which he in fact had? The proposition of appellant's counsel is that, because plaintiff sued upon the contract, supposing it had a cause of action thereon, and was defeated because the contract had been rightfully rescinded by the defendant's predecessor, leaving the subject thereof the property of respondent, it must nevertheless lose the same because another remedy is necessary to its recovery; that, while it was defeated because the subject of the action was not the property of Mrs. Shurts, it is in any event powerless to claim the thing which, by the judgment of the court, it owns. That seems to be unreasonable. If the doctrine as to the effect of an election between two inconsistent causes of action goes that far, it is certainly liable to cause great injustice in some cases. That, of itself, without investigation, suggests that it does not go that far. We should hesitate to sustain counsel's theory if the question involved was new, but it is not." *Fuller-Warren Co.* v. *Harter*, 110 Wis., 80, 85 N. W., 698; 53 L. R. A., 603, 84 Am. St. Rep., 867.

In *Zimmerman* v. *Robinson & Co.*, 128 Iowa, 72, 102 N. W., 814, 5 Ann. Cas., 960, it appears that notes were given by Zimmerman for the purchase price of a threshing machine, and a suit was instituted alleging

that the contract of purchase had been rescinded by Zimmerman on account of an alleged breach of warranty, and demanding recovery for the amount paid on the notes given for the purchase price.  It was adjudged that no rescission of the contract had been made. Thereupon there was an abandonment of the claim of rescission and an effort to set up a cause of action based upon the contract and an alleged breach thereof. The court held that the endeavor to enforce a recovery on the theory of a rescission of the contract was not such an election of remedies as to defeat the second action.  The result of the former trial was to demonstrate that there was no rescission, and that plaintiff's only remedy was for a breach of warranty.  The court said:

"In the language of the cited cases, such act indicates a mistake of remedy, and not a choice between two or more remedies, either of which was open to plaintiff."

The decisions appear to be in accord in holding that, where the action upon the one remedy has been prosecuted to a favorable judgment, that fact is regarded as so far unequivocal as to amount to a decisive and conclusive election, preventing the suitor from resorting later to the other remedy.  This rule was recognized in the case of *Phillips* v. *Rooker,* 134 Tenn., 457, 184 S. W., 12.

In that case, also, the probable effect of an attachment of a defendant's property at the instance of a plaintiff pursuing one of such remedies was referred

Montlake Coal Co. v. Chattanooga Co.

to. It is apparent that an attachment of property, under such claim of right, may be more detrimental to one sued than would be the taking of a judgment. It has the effect to seize and impound the effects of the defendant quite as effectually as would the levy of an execution. The authorities have recognized this, and declared that such an attachment works an unequivocal and decisive election.

In *Butler* v. *Hildreth,* 5 Metc. (Mass.), 49, it was said:

"We think that if the assignee commences an action against the purchaser for the price, and causes his property to be attached to secure it, this is a significant act, an unequivocal assertion that he does not impeach the sale, but by necessary implication affirms it. It is an act, too, deeply affecting the rights of the purchaser, whilst it is an assertion of his own; and if done with a knowledge of all the facts, which ought to influence him in his election, it is conclusive."

The court of appeals of New York wrote upon the same subject as follows:

"The contract between Branscom and the plaintiffs was, upon the discovery of Branscom's fraud, voidable at their election. As to him, the plaintiffs could affirm or rescind it. They could not do both, and there must be a time when their election should be considered final. We think that time was when they commenced an action for the sum due under the contract, and in the course of its prosecution applied for and obtained an attachment against the property of Brans-

com as their debtor. They then knew of the fraud practiced by him, and disclosed that knowledge in the affidavit on which the attachment was granted, and became entitled to that remedy because it was made to appear that a cause of action existed in their favor by reason of 'a breach of contract to pay for goods and money loaned obtained by fraud.'

"The attachment was levied and the action pending when the present action, which repudiates the contract, and has no support except on the theory of its disaffirmance, was commenced. The two remedies are inconsistent. By one the whole estate of the debtor is pursued in a summary manner, and payment of a debt sought to be enforced by execution; by the other specific articles are demanded as the property of the plaintiff. One is to recover damages in respect of the breach of the contract; the other can be maintained only by showing that there was no contract." *Conrow* v. *Little,* 115 N. Y., 387, 22 N. E., 346, 5 L. R. A., 693.

While the bill of complaint in this case does not show in terms on its face that the property of the defendant had been levied upon for the satisfaction of any recovery, it does show that it is an attachment bill; and if, on demurrer, it were permissible to look to the record now before us, we would find that there was an attachment of property of very considerable value. This fact makes the discussion of the effect of such an attachment more than academic.

Montlake Coal Co. v. Chattanooga Co.

In the case before us the Montlake Coal Company did not voluntarily dismiss the bill of complaint which alleged the fact of the invalidity of the lease.

Instead of adopting that course, complainant company sought to amend the bill so as to seek relief both by way of the remedy of rescission and by way of the remedy of reformation of the contract and the enforcement of one of its provisions.

This effort is attacked by demurrants. One of the grounds of demurrer is that complainant's bill as amended is inconsistent, in that it seeks to rescind the lease, and also to reform and enforce it.

In our opinion the bill as thus amended is subject to this charge of repugnancy. As observed, complainant yet holds to rescission as an existing enforceable right, and in another part of the bill seeks an enforcement of the contract. In one breath, the contract is as a matter of fact nonexistent because of vitiating fraud; in the next breath, the contract not only exists, but should be enforced. Complainant cannot be allowed in the same pleading to allege both the nullity and validity of the contract. Complainant consents to be bound by the lease if they enforce it, and then it cannot longer be treated as a nullity, for that would be to maintain a legal contradiction. We believe the courts and text-writers are in practical unanimity in holding that such a bill is demurrable.

The case of *Wilson* v. *New United States Cattle Ranch Co.*, 73 Fed., 997, 20 C. C. A. 244, illustrates

complainant's predicament.  We quote from it as fol-
lows:

"When a vendee ascertains that he had been in-
duced to make a contract of purchase by the fraudu-
lent misrepresentations of his vendor, he has a choice
of remedies.  He may rescind the contract, restore
what he has received, and recover back what he has
paid, or he may affirm the contract, and recover the
damages he has sustained by the fraud.  He cannot,
however, do both."

In *Neal* v. *Reynolds*, 38 Kan., 432, 16 Pac., 785,
the plaintiff asked the rescission of a contract of ex-
change of lands, and also damages for a breach of the
covenants of warranty contained in the deed to him;
and the court said:

"The amended petition stated causes of action en-
tirely inconsistent with each other.  One cause of ac-
tion is based on the affirmance of the contract of ex-
change; the other seeks to set aside and rescind the
contract for causes which, if well founded, would make
it inequitable to enforce it."

See, also, *Daly* v. *Brennan*, 87 Wis., 36, 57 N. W.,
963; *West* v. *Badger Lumber Co.*, 56 Kan., 287, 43 Pac.,
239; *Hopper* v. *Hopper*, 11 Paige, Ch. (N. Y.), 46; 18
Enc. Pl. & Pr., 740, *et seq.;* 2 Black on Rescission &
Can., section 612.

In *Shields* v. *Barrow*, 17 How., 130, 15 L. Ed., 158,
it was held that a bill may not be framed for rescis-
sion and for the specific performance of a contract.

Montlake Coal Co. v. Chattanooga Co.

For decisions of this court on repugnancy in pleading, see *Henderson* v. *Boyd,* 85 Tenn., 22, 1 S. W., 498; *Bynum* v. *Ewart,* 90 Tenn., 655, 18 S. W., 394; *Dillard & Coffin Co.* v. *Smith,* 105 Tenn., 372, 382, 59 S. W., 1010.

We are of opinion that the last-recited ground of the demurrer should have been sustained by the chancellor. It is here sustained, and the bill of complaint dismissed at the cost of the complainant.

An appeal was prayed by the Montlake Coal Company complaining of the chancellor's ruling to the effect that a case for rescission was not made. We have indicated our view touching that feature of the bill, but not by way of a formal holding. Since the demurrer sustained by us goes to the whole bill, that pleading fails in its every aspect.

Reverse the decree of the court of civil appeals accordingly.